STATE OF NEW JERSEY, v.
CHARLES L. MAKWINSKI, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided April 15, 1975.

*Mr. Thomas J. Kapsak,* Assistant Prosecutor, for the State. (*Mr. C. Judson Hamlin,* Prosecutor of Middlesex County, attorney).

*Mr. Benedict W. Harrington* for defendant.

GREENBERG, J. S. C. The matter comes on a motion to merge two counts of a criminal verdict of guilty and to arrest the merged conviction. *R.* 3:21–9.

Defendant Charles L. Makwinski was, at all times material, chief of police of the Borough of Carteret. The Middlesex

County grand jury returned a three-count indictment against him arising from his direction to a Carteret policeman to do repair work at a private club in Carteret during working hours. The first count charged a conspiracy with the policeman, an unindicted co-conspirator, to provide these services, contrary to *N. J. S. A.* 2A:98–1 and *N. J. S. A.* 2A:98–2. The second count accused defendant of the substantive crime of obtaining the services, allegedly a thing of value, as proscribed by *N. J. S. A.* 2A:135–3. The third count charged defendant with misconduct in office (*N. J. S. A.* 2A:85–1) in failing to refrain from using the policeman for the work at the club. Defendant was found not guilty of the first count but was found guilty of violation of the second and third counts. He now moves to merge the convictions into the second count and to arrest the merged verdict. He reasons that the convictions are based on the same operative facts and thus should merge and that the services of an employee are not a "thing of value" within *N. J. S. A.* 2A:135–3.

*N. J. S. A.* 2A:135–3 provides as follows:

Any person holding a public office, position or employment of this State or of a county, municipality, or school district, who willfully and knowingly obtains, or counsels, aids, assists, or procures in obtaining for any other person from the State, or from any such county, municipality, or school district, any money, notes, bonds, scrip, securities or other thing of value not lawfully and justly due to such person holding a public office, position or employment of this State or of a county, municipality, or school district or such other person at the time of obtaining the same, is guilty of a high misdemeanor.

The section is striking in its specific enumeration of five categories of intangible personal property: money, notes, bonds, scrip and securities, all being of no intrinsic value but rather being evidences of value or indebtedness and thus differing from tangible personal property or services. The specific enumeration is then followed by the broad words "other thing of value" which, standing alone, could include services or tangible personal property. But the listing by the

Legislature of the five items of intangible personal property indicates intent to deal with the financial affairs of the public agency rather than its general assets. This intent is further manifested by the use of the words "not lawfully and justly due" following "other thing of value." The implication is that the item involved might be spoken of as in fact being "justly due" either to the public officer or employee or the other person. While services or tangible personal property might be thought to be "justly due," such language is more appropriate in a financial setting as they are connotative of an obligation. Thus the general words "thing of value" appear to be inclusive only of things of the same class or character of the specific items and not inclusive of services. See *Transcontinental Gas Pipe Line Corp. v. Dept. of Conservation and Economic Development,* 43 *N. J.* 135 (1964); *Denbo v. Moorestown Tp.,* 23 *N. J.* 476 (1957); *Ford Motor Co. v. N. J. Dept. of Labor and Industry,* 5 *N. J.* 494 (1950).

This conclusion is buttressed by the further consideration that the term "thing of value" if broad enough to encompass services, would also include the five items specifically set forth, so that their particular enumeration is not necessary. The court, of course, should construe the statute to avoid rendering any portion of it superfluous. *Foy v. Dayko,* 82 *N. J. Super.* 8 (App. Div. 1964), certif. den. 41 *N. J.* 602 (1964); *General Roofing Co. v. Belmar,* 77 *N. J. Super.* 469 (App. Div. 1962); *Quinn v. Quinn,* 118 *N. J. Super.* 413 (Ch. Div. 1972). It must also be noted that since *N. J. S. A.* 2A:135–3 is a criminal statute it should be strictly construed, although with common sense consonant with the legislative objectives. *State v. N. J.,* 125 *N. J. Super.* 566 (App. Div. 1973). It thus follows that as a matter of internal interpretation and traditional construction devices *N. J. S. A.* 2A:135–3 does not include within its proscriptions services of a municipal employee, since they are not within the class or character of items intended

to be included within the term "thing of value" — intangible personal property.

A contrary interpretation would lead to a result of remarkable and discordant harshness. *N. J. S. A.* 2A:135–3 places no minimum worth on a "thing of value." Consequently, if an item of tangible personal property of nominal cost were unlawfully taken the public officer or employee would be guilty of a high misdemeanor, for if a thing of value includes services certainly it includes tangible personal property. Yet the Legislature has provided that larceny of an item of value of $200 or less is ordinarily disorderly conduct and larceny of an item of value of between $200 and $500 is a misdemeanor. *N. J. S. A.* 2A:170–30.1; *N. J. S.* 2A:119–2.[1] Such a disparity of treatment of a petty larceny on the basis of the employment of the defendant and nature of the victim is startling. The court, therefore, in seeking a common sense construction of *N. J. S. A.* 2A:135–3 views that section as being addressed to a particular evil subject to reasonable delineation, defalcations in the financial affairs of the public agency. The Legislature must have conceived that special penalties were appropriate for officers or employees in such matters so directly related to the public treasury. Thus the verdict of guilty on the second count of the indictment is arrested and that count dismissed.

Defendant further argues that the conviction under the third count for misconduct in office, being a misdemeanor, must be merged into the conviction under the second count, a high misdemeanor and thus the greater offense, and that count being dismissed, the prosecution fails in its entirety. Implicit is the extraordinary premise that defendant gain an advantage by the fortuitous coupling of an otherwise valid verdict with its arrested mate. But the law is not so capri-

---

[1] Of course, when the *Revised Statutes* were adopted larceny was dealt with criminally as either a misdemeanor or high misdemeanor, and not as disorderly conduct, the dividing line being $20. *R. S.* 2:145–2.

cious. The court will not view a merger in these circumstances as occurring as a matter of law upon the return of the verdict. Rather the matter should be viewed realistically. A merger will be declared only of valid convictions and is not, at least in the context of this case, self-executing. Thus, while undoubtedly the convictions would have merged if valid, as the identical evidence proved both counts, there is no merger here. See *State v. Bono,* 128 *N. J. Super.* 254 (App. Div. 1974) ; *State v. Hill,* 44 *N. J. Super.* 110 (App. Div. 1957). Therefore the verdict is sustained on the third count.